UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:19-cv-22886-LFL

EVELYN FERNANDEZ,

    Plaintiff,

vs.

CRYSTAL CRUISES, LLC,

    Defendant.
_____/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**WITH SUPPORTING MEMORANDUM OF LAW**

Defendant, Crystal Cruises, LLC ("Defendant"), pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L. R. 7.5, respectfully moves for the entry of summary final judgment in this action because there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law.[1]

**I.**    **INTRODUCTION**

The undisputed facts of this case establish that Defendant terminated Plaintiff from her position because of ongoing performing deficiencies, which Plaintiff had been made aware of on multiple occasions. Plaintiff now claims that Defendant subjected her to disparate treatment because of her age and national origin, and disparate compensation because of her gender — claims that she never presented to anyone at Defendant prior to the termination of her employment. The record establishes, however, that Plaintiff's gender was not a factor in determining her rate of pay, and her age and national origin were not a factor in any decisions made during her employment, including the termination of her employment. To the contrary, the record makes clear that Plaintiff was paid the same as male employees in the same position, until a difference in ratings on their

---

[1] Pursuant to Local Rule 7.5, Defendant prepared a concise statement of undisputed material facts as to which Defendant contends there is no genuine issue to be tried, and has simultaneously filed same in conjunction with its Motion for Summary Final Judgment. Reference to the Statement of Undisputed Material Facts will be designated as "SOF."

2017 performance evaluation led to her receiving a lower raise. Additionally, the record makes clear that Plaintiff never applied for any open positions or promotions and her employment was terminated for ongoing performance issues (which Plaintiff herself admitted to).

An analysis of the facts of this case and applicable law conclusively demonstrates that Defendant is entitled to summary judgment on Plaintiff's Equal Pay Act claim (Count I) and on Plaintiff's age and national origin discrimination claims (Counts II-V). Accordingly, this Honorable Court should grant Defendant's Motion for Summary Judgment and dismiss the claims as a matter of law.

**II.     ARGUMENT**

    **A.     Summary Judgment Standard.**

Summary judgment is appropriate when the pleadings, discovery, and exhibits show there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party is not required to produce evidence showing the absence of a genuine issue of material fact; rather, the moving party's burden is satisfied by showing that there is insufficient evidence to support the non-moving party's case. *Id*. at 325. The party opposing a dispositive motion must provide sufficient evidence that would allow a reasonable trier of fact to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Id*. at 252. Moreover, a plaintiff's speculative testimony about the motive for an employer's employment action is insufficient to create a triable issue of material fact. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990) (conclusory allegations insufficient to defeat summary judgment motion). As set forth herein, Defendant has met its burden on summary judgment regarding Plaintiff's claims.

    **B.     Summary Judgment Is Proper As To Plaintiff's Equal Pay Act Claim.**

The Equal Pay Act ("EPA") provides, in relevant part:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which

>are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C. § 206(d)(1).  By choosing to use the term "equal work" instead of "comparable work," Congress manifested its intent to narrow the applicability of the Act, and permit employers discretion in setting pay. *Major v. Green Thumb Landscaping, Inc.,* 2005 U.S. Dist. LEXIS 33963 (M.D. Fla. Apr. 13, 2005) (citing *Waters v. Turner, Wood & Smith Ins. Agency, Inc.*, 874 F.2d 797, 799 (11th Cir. 1989)).

To establish a *prima facie* case under the Equal Pay Act of 1963, a plaintiff "must show that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S. Ct. 2223, 2228, 41 L. Ed. 2d 1 (1974) (quoting 29 U.S.C. § 206 U.S.C.A. 206(d)(1)).  As a preliminary matter, Plaintiff cannot establish a *prima facie* case under the Equal Pay Act because she cannot show that Defendant pays different wages to employees of opposite sexes. Significantly, Plaintiff and all other individuals (male and female) who were hired as Accounts Payable Clerks in March 2017 were paid the same starting rate of $21 per hour, which equates to $40,950 annually. *SOF*, at A.6. Plaintiff identified two employees (Marcel Salup and Raul San Roman) who she claims were paid more than her, but there is no evidence to support her claim. In fact, Plaintiff herself admits that she did not know exactly what Mr. Salup and Mr. San Ramon were paid, and that her belief they were paid more was simply based on rumors she heard. *SOF*, at F.2.  Contrary to the alleged rumors, Mr. Salup and Mr. San Roman were both paid the <u>same</u> amount as Plaintiff when hired in March 2017. *SOF*, at F.3. Plaintiff has failed to show that her employer pays different wages to employees of opposite sexes. *Okazaki v. Dep't of Children & Families*, 2008 U.S. Dist. LEXIS 77702, 19-20 (N.D. Fla. Oct. 3, 2008)(noting that the plaintiff failed to establish that her employer paid different wages to employees of opposite sexes in part because the defendant presented evidence of male comparators whose wages are similar to or less than the plaintiff's wages).  To the extent Plaintiff claims that subsequent changes in pay were based on sex, this too is false, as all changes in rates of pay were due to performance-based merit increases or promotions.

If a plaintiff makes out a *prima facie* case, then the burden of proof shifts to the employer

to prove the pay difference is justified by one of the four exceptions in the Equal Pay Act: "(i) seniority; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *Corning Glass Works*, 417 U.S. at 196, 94 S. Ct. at 2229 (quoting 29 U.S.C. § 206(d)(1)). A defendant must show that the factor of sex provided no part of the basis for the wage differential. *Mulhall v. Advance Sec.,* 19 F.3d 586, 590 (11th Cir. 1994). Thus, unlike a Title VII action, if the plaintiff establishes a *prima facie* case, then the burden of proof and production shifts to the employer and the exceptions are affirmative defenses of which the employer bears the burden of proof. *See Okazaki v. Dep't of Children & Families,* 2008 U.S. Dist. LEXIS 77702 (N.D. Fla. Oct. 3, 2008). As noted above, Plaintiff cannot establish a *prima facie* case. However, assuming, *arguendo*, that she can, the undisputed evidence overwhelmingly establishes that any pay differentials were based on factors other than sex.

Plaintiff and the other employees in the Accounts Payable Department were all eligible for merit increases each year, including 2018. The amount of the merit increase varied depending on the employee's performance the preceding year. *SOF*, at B.8. The baseline merit increase was 3% in 2018, for anyone whose performance met standards, but individuals who did not perform up to standards were given a merit increase of less than 3% and individuals who outperformed standards were given a merit increase of higher than 3%. *Id.* Mr. Salup received a 3% raise (to $21.63 per hour) because the ratings he received on his 2017 evaluation established that his performance met standards, and Mr. San Roman received a 3.5% raise (to $21.74 per hour), because the ratings that he received on his 2017 evaluation established that he was outperforming standards. *SOF*, at F.4-5. Plaintiff has absolutely no evidence to establish that any difference in the merit raises provided to Mr. Salup and Mr. San Ramon was based on sex. That is because it was not. This is further demonstrated by the fact that some female Accounts Payable Clerks received the same merit increases in 2018 as Mr. Salup and Mr. San Ramon. Specifically, Edna Salazar received a 3% raise (to $21.63 per hour) for the same reason as Mr. Salup, and Stefany Diaz received a 3.5% raise (to $21.74 per hour) for the same reason as Mr. San Ramon. *SOF*, at F.6. Plaintiff even acknowledged herself that she understood the reasoning for the difference in merit increases that were provided to the Accounts Payable team. *SOF*, at B.7.

As clearly set forth above, any differential between Plaintiff's pay and those of the two male peers she identified was based on their performance, not their gender. This is sufficient to

sustain Defendant's burden to show that the salary disparity did not result from sex discrimination. *See Schwartz v. Florida Bd. of Regents*, 954 F.2d 620, 623-624 (11th Cir. 1991)("So long as subjective business justifications, not part of a merit system, are not overly subjective so as to render them incapable of being rebutted, they are legitimate factors to be considered."); *Fowler v. Blue Bell, Inc.*, 737 F.2d 1007, 1011 (11th Cir.1984) (subjective business justifications that are capable of objective evaluation are sufficient to sustain defendant's burden of rebuttal in Title VII case); *Slattery v. Precision Response Corp.,* 167 Fed. Appx. 139, 143 (11th Cir. Fla. 2006)(supervising more employees, performing additional, significant duties, and managing more accounts requires greater skill, effort, and responsibility).

There is simply no evidence in this matter to support a conclusion that the Equal Pay Act has been violated. Accordingly, summary judgment is proper as to Count I.

### C. Summary Judgment is Proper as to Plaintiff's Age and National Origin Discrimination Claims.[2]

In Counts II-V, Plaintiff alleges she was subjected to discrimination because of her age and national origin (Venezuelan). *See* Complaint (ECF 1). Specifically, Plaintiff alleges that, because of her age and national origin, she was subjected to inappropriate comments by Lisa Wilson, Blanca Pena and Kalinka Rodriguez, she was passed over for promotions, and she was wrongfully terminated. These allegations are made without any factual support. To the contrary, it is undisputed that Plaintiff was not subjected to any discrimination based on her age or national origin. Plaintiff's discrimination claims fail as a matter of law, and Defendant is entitled to summary judgment on these claims.

#### 1. Relevant Standards

Title VII prohibits discrimination in employment decisions on the basis of "race, color, religion, sex or national origin[.] *See* 42 U.S.C. § 2000e-2(a)(1). Similarly, the Age Discrimination in Employment Act of 1967 ("ADEA") prohibits employers from discharging an employee who

---

[2] In Counts II-V, Plaintiff is asserting claims under ADEA, Title VII, and the Florida Civil Rights Act ("FCRA"). When analyzing discrimination claims under the ADEA, Title VII, and the FCRA, courts follow the same burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) and its progeny. *Quitto v. Bay Colony Golf Club, Inc.,* 2007 U.S. Dist. LEXIS 48509 (M.D. Fla. 2007) *citing Gamboa v. American Airlines,* 170 Fed. Appx. 610, 612 (11th Cir. 2006). Accordingly, Plaintiff's discrimination claims under the ADEA, Title VII, and the FCRA will be analyzed together under the same framework in this brief.

is at least 40 years old because of his age. *See* 29 U.S.C. §§ 623(a)(1), 631(a). Importantly, the Supreme Court has set a high standard of proof for age discrimination claims. Specifically, to advance past the summary judgment stage, a plaintiff must prove "but for" her age, she would not have suffered discrimination. *See Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009). A "but-for" cause requires a closer link than mere proximate causation; it requires the proscribed animus have a determinative influence on the employer's adverse decision. *See Sims v. MVM, Inc.*, 704 F.3d 1327 (11th Cir. 2013).

"In employment discrimination cases, the plaintiff must show that defendant intentionally discriminated against him, a burden that remains at all times with plaintiff." *Quitto*, 2007 U.S. Dist. LEXIS 48509 *7 citing *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207, (1981). In order to do so, a "Plaintiff must first present a prima facie case of discrimination by either … showing direct evidence of discrimination [or] satisfying the scheme for circumstantial evidence of discrimination under *McDonnell Douglas* …."[3] *Id*.

"Direct evidence of discrimination is evidence which, if believed, would provide the existence of a fact in issue without inference or presumption. Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [a protected characteristic] constitute direct evidence of discrimination." *Bass v. Bd. of County Comm'rs.*, 256 F.3d 1095, 1105 (11th Cir. 2011). In the absence of direct evidence of discrimination, a Plaintiff must establish his case "through circumstantial evidence using the … burden-shifting analysis employed in Title VII employment discrimination cases." *Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2002); *see also McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973). Under that paradigm, a plaintiff must first establish a *prima facie* case of unlawful discrimination. Once a plaintiff sets forth a *prima facie* case, then the employer must articulate a legitimate, non-discriminatory basis for the action. *Wascura*, 257 F.3d 1242 (*citing Chapman v. Al. Transport,* 229 F.3d 1012, 1024 (11th Cir. 2000)). However, the employer's burden is merely one of production; it need not persuade the court that it was actually motivated

---

[3] Plaintiff can also establish a prima facie case by "demonstrating, through statistics, a pattern of discrimination," (*Id*.), however, Plaintiff has not claimed any pattern of discrimination nor has she presented any such statistical evidence in this case. As such, this discussion will be limited to direct and circumstantial evidence.

by the proffered reasons. *Id*. Once the employer sets forth a legitimate, non-discriminatory reason, then the presumption of discrimination is eliminated from the case and the plaintiff must come forward with evidence sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. *Id*., at 1243. If the plaintiff fails to proffer sufficient evidence to create a genuine issue of material fact as to whether each of the defendant's proffered reasons is pretextual, the defendant is entitled to summary judgment. *Id*.

As shown below, Plaintiff cannot establish a *prima facie* case of unlawful discrimination under the ADEA, Title VII, or the FCRA. This, in and of itself, is fatal to Plaintiff's claims contained in Counts II -V of her Complaint. However, even assuming, for purposes of this Motion, that Plaintiff can establish a *prima facie* case (which she cannot), Defendant is still entitled to summary judgment on those claims because there is not a shred of evidence to support a conclusion that Defendant's legitimate, nondiscriminatory reasons for terminating Plaintiff's employment (or any other adverse actions) was a mere pretext for age and/or national origin discrimination.

**2.   Plaintiff Cannot Establish a *Prima Facie* Case of Age or National Origin Discrimination.**

**a.   Plaintiff Does Not Have Direct Evidence of Discrimination.**

In the instant case, Plaintiff cannot establish a *prima facie* case of age or national origin discrimination through direct evidence. To constitute direct evidence, a statement must "(1) be made by a decisionmaker; (2) specifically relate to the challenged employment decision; and (3) reveal blatant discriminatory animus." *Chambers v. Walt Disney World Co.*, 132 F. Supp. 2d 1356, 1364 (M.D. Fla. 2001). Furthermore, "remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). When refuting direct evidence of discrimination, a defendant's burden is one of persuasion not production. *Bass*, 256 F.3d at 1104.

Plaintiff alleges that three employees made comments regarding her age and national origin during her employment. First, she claims that, during an employee meeting shortly after Plaintiff was hired in March 2017, Lisa Wilson told her "you and Edna have the same problem." *SOF*, at D.6. Plaintiff *believes* Ms. Wilson was referring to her heavy accent, although Plaintiff concedes that Ms. Wilson did not say anything about her accent. *Id.* Next, Plaintiff claims that, on three

7

separate occasions during staff meetings, Ms. Wilson said "Sorry, I'm too old." *Id.* Plaintiff *believes* that Ms. Wilson was referring to Plaintiff, because she was looking in Plaintiff's direction. when making the comment. *Id.* Lastly, Plaintiff claims to have heard "rumors" that Blanca Pena and Kalinka Rodriguez called her a "stupid old woman," and a "prostitute," while in the office of Defendant's former General Counsel. *SOF*, at D.7. Plaintiff admits she never heard the "rumored" comments herself. *Id.*

Plaintiff contends that these statements show Defendant subjected her to discrimination because of her age and national origin. However, even if these statements were made, there is no evidence that Ms. Wilson was referring to national origin as "the same problem," and there is no evidence that Ms. Wilson was referring to anyone other than herself when she said "Sorry, *I'm* too old" (*i.e.,* the plain language of the comment shows that Ms. Wilson was referring to herself). While referring to Plaintiff as a "prostitute" or a "stupid old woman" would be inappropriate, Plaintiff cannot rely on "rumors" of such comments as direct evidence of discrimination. Regardless, the stray remarks alleged by Plaintiff are simply too vague and too attenuated to constitute direct evidence of age discrimination as a matter of law. *Beaver v. Rayonier, Inc*., 200 F.3d 723, 729 n. 4 (11th Cir. 1999) (holding an employer's statements the employer wanted to attract "younger, engineer-type employees or supervisors" and one could tell the age of the workforce "by looking at all the bald heads out there," did not constitute direct evidence of discrimination); *Standard v. A.B.E.L. Servs., Inc*., 161 F.3d 1318, 1329 (11th Cir. 1998). Moreover, Plaintiff has not alleged (nor has she provided any evidence to show) that these comments were made in relation to her performance reviews, counselings, or the termination decision itself—in fact Plaintiff testified that the last comment she heard from Ms. Wilson occurred about eight (8) months prior to Plaintiff's termination. *SOF*, at D.6. Further, Ms. Pena was never an Accounts Payable employee or a decisionmaker for any of the purported adverse employment actions, and Ms. Rodriguez' employment was terminated in March 2017 (*i.e.,* the same month that Plaintiff was *hired*). *SOF*, at E.7; B.1. As a result, these alleged stray comments do not constitute direct evidence of discrimination.

      **b.**  **Plaintiff Cannot Establish a *Prima Facie* Case of Discrimination With Circumstantial Evidence.**

As Plaintiff cannot show any direct evidence that she was terminated because of her age or national origin, she must rely on circumstantial evidence to prove discriminatory intent, using the

8

framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *see also Dominguez v. Lake Como Club*, 520 F. App'x 937, 940 (11th Cir. 2013). To establish a *prima facie* case of discrimination, Plaintiff must establish the following elements: (1) she belongs to a protected category; (2) she was subjected to an adverse employment action; (3) similarly situated employees outside of her protected classification(s) were treated more favorably; and (4) she was qualified to do her job. *Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997) (citing *McDonnell Douglas Corp*., 411 U.S. 792). In this instance, Plaintiff is unable to establish a *prima facie* case of discrimination based on age or national origin as she cannot show that (1) similarly-situated employees outside of her protected classification were treated more favorably, or (2) she was qualified for her position.[4] Even if she could establish a *prima facie* case, Defendant had legitimate, non-discriminatory reasons for her termination, and there is no evidence to support a conclusion that these reasons were a mere pretext for discrimination.

### 1) There Are No Similarly Situated Employees Who Were Treated More Favorably.

Plaintiff alleges that she was treated differently than others, but the reality is that she has not provided any evidence that *similarly situated* employees outside of her protected class were treated more favorably. Specifically, she has not identified another employee in her department that committed all of the same or similar offenses, but was not terminated. As a result, Plaintiff cannot establish a *prima facie* case. *See Blow v. Virginia Coll.*, 619 F. App'x 859, 863 (11th Cir.

---

[4] For the purposes of this Motion, Defendant does not dispute that Plaintiff was a member of a protected class based on her age and national origin, or that she suffered an adverse employment action in her termination—Defendant will only concede that Plaintiff's *termination* would constitute as an adverse employment action. Although Plaintiff does challenge being "disciplined for minor or trivial things," she was not subjected to any formal discipline. *SOF*, at B.3; C.1. Further, a discipline will not constitute an adverse employment action, and her claim would fail on this basis as well. *Moore v. Shands Jacksonville Med. Ctr., Inc.,* 2013 U.S. Dist. LEXIS 190735 (M.D. Fla. 2013) ("The Eleventh Circuit has observed that 'criticisms of an employee's job performance — written or oral — that do not lead to tangible job consequences will rarely form a permissible predicate for a Title VII suit.'"); *see also Kubiak v. S.W. Cowboy Inc.,* 164 F.Supp. 3d 1344 (M.D. Fla. 2016) ("A write-up alone, without any indication that it was accompanied by a reduction in pay, benefits, responsibilities, or some other adverse effect, is insufficient to establish an adverse employment action."). For the same reasons, Plaintiff's performance evaluation would not constitute an adverse employment action, particularly given that it resulted in Plaintiff receiving an <u>increase</u> in her pay. *SOF*, at B.7.

2015); *Dent v. Fed. Mogul Corp.*, 129 F. Supp. 2d 1311, 1314 (N.D. Ala. 2001) (holding no actionable claim "because Plaintiff has failed to identify an employee of another race or gender who was both treated more favorably than and 'similarly situated' to him, for purposes of establishing a prima facie case . . . .").

In order to meet this element of a *prima facie* case, Plaintiff would have to allege that Defendant provided a "nearly identical" individual with favorable treatment under substantially similar circumstances. *Dickinson v. Springhill Hosps., Inc.*, 187 F. App'x 937, 939 (11th Cir. 2006); *see also MackMuhammad v. Cagle's Inc*., 379 Fed. Appx. 801, 804 (11th Cir. 2010) ("To show that employees are similarly situated, the plaintiff must show that the employees are similarly situated in all relevant respects"); *Diaz v. Fla*., 219 F. Supp. 3d 1207, 1215 (S.D. Fla. 2016) ("Where . . . the plaintiff claims that the employer discriminated against her in meting out discipline, in determining whether the plaintiff and the employees she says are similarly situated, '[courts are to] evaluate whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways"). In determining whether conduct is "similar," the Eleventh Circuit requires "that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). The "nature of the offenses committed and the nature of the punishment imposed" are the key to determining what conduct is "similar." *Jones v. Gerwens*, 874 F.2d 1534, 1540-41 (11th Cir. 1989). Moreover, evidence of similar conduct is "relevant only if it could be shown that [the decisionmaker] knew of such practices and did not act to discipline rule violators." *Id.*, at 1542; *see also Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1261 (11th Cir. 2001) ("differences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of discrimination").

Here, the "nature of the offense committed" by Plaintiff that resulted in her termination was a series of performance issues that were documented beginning in November of 2017 and continuing through March of 2018. The performance issues included Plaintiff's failure to process invoices correctly and failure to timely respond to inquiries regarding invoices—central aspects of her job. *SOF*, at A.7. While Plaintiff generically claims that other employees in the Accounts Payable department committed similar errors as she did and were not subjected to any disciplinary actions, she has offered no facts regarding who the alleged comparators are, when the alleged acts

of these comparators occurred, or who was involved in the decisions with respect to those alleged comparators. Plaintiff's only support for her claim is a vague assertion that she knew other people made errors because "they were only human," "they were not machines." *Pl. Dep.,* 233:16-22. Plaintiff cannot rely on vague allegations to establish a *prima facie* case. *See Walker v. Sports Auth.*, 1998 U.S. Dist. LEXIS 5216, *10-11 (M.D. Fla. Feb. 20, 1998) (no *prima facie* case because the plaintiff did not offer sufficient facts about the particularities of the alleged similarly situated conduct); *see also Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1312 (11th Cir. 1998) (the fact that the alleged dissimilar treatment was "several years distant from [the plaintiff's] acts . . . may be sufficient to prevent them from being considered 'similarly situated'").

Because Plaintiff cannot provide evidence of another employee engaging in similar conduct, she cannot establish that another employee engaged in similar conduct and was treated more favorably. Accordingly, she cannot establish a *prima facie* case, and summary judgment should be entered in Defendant's favor.

### 2) **Plaintiff Was Not Qualified For Her Position.**

To show that one is "qualified" for his or her position, a plaintiff must demonstrate he was meeting the "legitimate expectations" and "objective qualifications" of the employer. *See, e.g., Aldabblan v. Festive Pizza, Ltd.*, 380 F. Supp. 2d 1345, 1352 (S.D. Fla. 2005); *see also Vessells v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769 (11th Cir. 2002). Courts consistently have held that a plaintiff is unqualified for her position if she is discharged based on poor performance. *See, e.g., See Dorvil v. Advance Stores Co.*, No. 10-60036-CIV, 2011 WL 6069362, *13 (S.D. Fla. Dec. 6, 2011) (employer "made a business decision to terminate a Store Manager who neglected his responsibilities as Store Manager and thus proved ineffective in that position" where audit showed that manager's store failed to comply with many of employer's performance standards); *Duvall*, 2014 WL 11412698, *4 (S.D. Fla. October 31, 2014)(plaintiff who was terminated because he did not meet performance requirements could not prove he was qualified for his position); *Baas v. Guess?, Inc.*, 54 F. Supp. 2d 1105, 1115 (S.D. Ala. 1999)(employer was displeased with plaintiff's performance and performance of her stores, so plaintiff was not qualified for position from which she was discharged); s*ee also Boner v. Bd. of Comm'rs of Little Rock Mun. Water Works*, 674 F.2d 693, 696 (8th Cir. 1982)(lower court did not err in concluding plaintiff was not qualified for position due to his poor job performance).

Here, the record is clear that Plaintiff was not meeting Defendant's performance

expectations, for a multitude of reasons. *SOF*, at B.2; C.1-2; C.4. Accordingly, Plaintiff cannot establish the "qualified" prong of her *prima facie* case and her age and national origin discrimination claims cannot survive summary judgment.

### 3. Defendant Has Articulated a Legitimate, Non-Discriminatory Reason for Plaintiff's Termination and There is No Evidence Showing the Reason was a Pretext for Discrimination.

Assuming, *arguendo*, that Plaintiff could establish a *prima face* case of age and/or national origin discrimination (and she cannot), Defendant had legitimate, non-discriminatory reasons for terminating her employment. Discrimination laws do not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984), *abrogated on other grounds by Lewis v. City of Union City, Ga.*, 918 F.3d 1213 (11th Cir. 2019). An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory [or retaliatory] reason." *Id*. (citations omitted); *see also Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999).

Plaintiff's employment was terminated due to continuing performance issues that were brought to her attention on multiple occasions throughout her employment and which ultimately impacted the Company financially and jeopardized its reputation with clients and business partners. *SOF*, at C.5. The last straw came in late March 2018, when a business partner (Ritz Carlton) complained about Plaintiff's continued failure to ensure payment of two deposit invoices for a group stay at the Ritz Carlton (via the Lands Department), and her continued failure to respond to inquiries about the status of the payment, failures that caused the vendor to threaten to require each individual guest to pay out of pocket for their hotel stay if payment was not received from Defendant that same day. *SOF*, at C.2. The issue was significant enough that it was brought to the attention of Plaintiff's direct supervisors, and then escalated to the Vice President of Land Programs, who brought it to the attention of the CFO. *SOF*, at C.3. The CFO then told Mr. Gomez and Ms. Wilson that he had received calls from other vendors as well, complaining about Plaintiff's management of their accounts and nonpayment. *SOF*, at C.4. After discussion, Mr. Gomez and Ms. Wilson made the decision to terminate Plaintiff's employment. *SOF*, at C.5. Mr. Gomez reached out to Human Resources to explain the reasons for the termination decision and to request approval for the decision, which Human Resources provided. *SOF*, at C.6-7. There can be no

doubt that these were legitimate, non-discriminatory reasons for the decision to terminate Plaintiff's employment. *Young v. General Foods Corp.,* 840 F.2d 825, 830 (11th Cir. 1988) (poor job performance is a valid non-discriminatory reason for discharge); *Anderson v. Triad Int'l Maint. Corp.*, 2012 U.S. Dist. LEXIS 78446, *15 (M.D. Fla. June 6, 2012).

As Defendant rebutted any presumption of discriminatory intent, to survive summary judgment, Plaintiff must create a genuine issue of material fact as to whether Defendant's stated reason is a pretext for age and/or national origin discrimination and not actually the motivation behind Plaintiff's termination. *Combs v. Plantation Patterns, Meadowcraft, Inc.,* 106 F.3d 1519, 1538 (11th Cir. 1997). Plaintiff may not merely recast Defendant's nondiscriminatory reasons or substitute her judgment for that of her former employer. *Chapman*, 229 F.3d at 1030. Instead, Plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find [all of those reasons] unworthy of credence." *Combs*, 106 F.3d at 1538.

The record is completely devoid of any evidence (credible or otherwise) that the decision to terminate Plaintiff's employment based on her poor performance was pretext for age or national origin discrimination. The evidence supporting Defendant's decision is undisputed. The pretext inquiry is concerned with Defendant's perception of Plaintiff's performance, not Plaintiff's own speculative and unsupported beliefs. Plaintiff does not dispute the actions forming the basis of the counselings that occurred and provides no colorable evidence to the contrary. Indeed, Plaintiff admitted she was making errors and needed to focus more. *SOF*, at B.4.  Plaintiff cannot show Defendant's evaluation of her job was pretextual. *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997) (holding when employer produces negative performance reviews, employee's assertion of his own good performance is insufficient to defeat summary judgement). The heart of the pretext inquiry is not whether Plaintiff agrees with the reasons Defendant gives for her termination (or other employment actions), but whether Defendant really was motivated by those reasons. Plaintiff's mere disagreement fails to prove Defendant's legitimate, nondiscriminatory reasons are merely pretext. Quarreling with that reason is not sufficient to prove pretext. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088, *abrogated on other grounds* (11th Cir. 2004) (internal citations omitted).

Additionally, an inference against pretext arises where the same actor is responsible for the decision to both hire and fire the employee. *Brown v. CSC Logic, Inc.,* 82 F.3d 651, 658 (5th Cir.

1996). To overcome the inference, the employee must present "sufficiently egregious" facts to explain why an alleged discriminatory animus informed the termination decision but not the hiring decision. *Nomani v. Star Furniture Co.*, 2016 WL 4192057, *11 (S.D. Tex. Aug. 8, 2016). Defendant benefits from a presumption against discrimination because Ms. Wilson was involved in the hiring of Plaintiff as well as her termination. There are no facts – let alone "sufficiently egregious" facts – to show Ms. Wilson suddenly developed a discriminatory animus against Plaintiff because of her age or national origin that would support a finding of pretext under those circumstances. In fact, it defies logic that Ms. Wilson would hire Plaintiff at the age of 59, only to terminate her employment a year later. While Plaintiff may believe that her age or national origin played a factor in Defendant's decision to terminate her employment, there simply is no such evidence of this and Plaintiff cannot establish that the stated reason for her termination is false or a mere pretext for intentional age or national origin discrimination.

### 4. **Plaintiff's Failure to Promote Claim Also Fails.**

Plaintiff also alleges that she was denied promotions because of her age and her national origin. Specifically, she claims that younger and less experienced employees received promotions, and that employees of a different national origin received promotions, which were not offered to her and/or which should have been given to her. In order to establish a *prima facie* case of discrimination based on failure to promote, Plaintiff must show that: (1) she belonged to a protected class; (2) she was qualified for and applied for a position; (3) despite qualifications, she was rejected; and (4) the position was filled with an individual outside her protected class. *Guimaraes v. NORS,* 366 Fed. Appx. 51 (11th Cir. Feb. 16, 2010).

In her deposition, Plaintiff identified eight (8) individuals who she claims received promotions over her.[5] However, several of these individuals were not promoted until *after* Plaintiff's employment had already been terminated. This includes: Blanca Pena (promoted to Senior Staff Accountant on April 2, 2018), Stefany Diaz (promoted to Junior Staff Accountant on April 23, 2018), Raul Reyes San Ramon (promoted to Junior Staff Accountant on October 22, 2018), and Tian Qi (promoted to Senior Staff Accountant on August 20, 2018) *SOF*, at E.4; E.7-8. As Plaintiff was no longer employed by Defendant at the time these promotions occurred, they

---

[5] Dagmar Moral (d/o/b 1968); Gianfranco Gallesi (d/o/b 1984); Stefany Diaz (d/o/b 1993); Raul San Ramon (d/o/b 1977); Blanca Pena (d/o/b 1991); Nancy Garrido (d/o/b 1982); Tian Qi (d/o/b 1987); and Crystal Coto (d/o/b 1991).

14

cannot form the basis for any failure to promote claim.

As to the remaining individuals, Plaintiff cannot establish that she was qualified for the positions they were promoted to, or that they were less qualified than her for the positions. Ms. Garrido and Ms. Coto were both hired directly into the Accounting department due to their background and experience in that area. Ms. Garrido was hired as a Junior Staff Accountant on March 16, 2017 as she had an accounting degree, which Plaintiff did not have. *SOF*, at E.5; E.10; E.15. Ms. Garrido was promoted to Staff Accountant on October 1, 2017. *SOF*, at E.5. Ms. Coto was hired and promoted before Plaintiff's employment with Defendant began. Specifically, Ms. Coto was hired as a Revenue Accountant on July 18, 2016 and was promoted to a Staff Accountant on December 1, 2016. *SOF*, at E.6. She was then promoted again, to a Senior Staff Accountant, on October 1, 2017. *Id.* Unlike Plaintiff, Ms. Garrido and Ms. Coto both came in with significant prior experience in accounting as well as accounting degrees. *SOF*, at E.10. Accounting degrees were required for the Staff Account and Senior Staff Accountant positions, and strongly preferred for the Junior Staff Accountant position. *SOF*, at E.11. While Plaintiff claims she is an "economist, almost an accountant" she does not in fact hold an accounting degree, and therefore was not qualified for these positions. *SOF*, at E.15.

This leaves the promotions of Dagmar Moral (to Accounts Payable Analyst on January 29, 2018) and Gianfranco Gallesi (to Accounts Payable Lead on May 3, 2017). The Accounts Payable Analyst and Accounts Payable Lead positions were more senior supervisory roles requiring the ability to train and direct the Accounts Payable team and to work self-sufficiently. *SOF*, at E.12. Plaintiff lacked the qualifications necessary for these positions as she demonstrated an inability to properly conduct her own work, and certainly could not have been tasked with directing others. Moreover, Plaintiff failed to demonstrate any initiative in her work, which was key for these leadership positions. *SOF*, at B.5.

Plaintiff has presented no evidence to show that she was qualified for the position(s) at issue or that the individuals that filled those positions were "equally or less qualified." Moreover, while the individuals selected for these other positions were younger than Plaintiff, she has not presented any evidence to indicate that age played any role in these employment decisions. Similarly, she has not presented any evidence to indicate that national origin played any role in these employment decisions. In contrast, Ms. Pena is from Venezuela, just like Plaintiff, which clearly establishes that Plaintiff's national origin was not a factor. *SOF*, at D.3; E.7.

15

In addition to her lack of qualification(s), Plaintiff's claim also fails because she never applied for *any* other position while employed at Defendant. *SOF*, at E.2; E.14. In this instance, the subject positions identified by Plaintiff were all posted or otherwise advertised to all employees (including Plaintiff), along with instructions on how to apply. *SOF*, at E.1. "Generally, if an employer has a formal system for posting vacancies and allowing employees to apply for such vacancies, 'an employee who fails to apply for a particular position cannot establish a prima facie case of discriminatory failure to promote.'" *Giles v. Bellsouth Telecommunications, Inc.,* 542 Fed. Appx. 756 (11th Cir. 2013)." Plaintiff makes a broad assertion that she applied for promotions, but she has not provided any actual evidence that she did so, nor any details about which position she applied for, when she did so, or anything else of credible support. In contrast, Defendant has no record of any application being submitted by Plaintiff, for any of the positions that she has placed at issue. *SOF*, at E.2; E.14.

Defendant acknowledges that, in certain instances, a non-applicant may still be able to establish a *prima facie* case, however, in that instance a plaintiff must show "that she refrained from applying due to a justifiable belief that the employer's discriminatory practices made application a futile gesture." *EEOC v. Joe's Stone Crabs, Inc.,* 296 F.3d 1265, 1274 (11th Cir. 2002). "To have a 'justifiable belief' for purposes of this exception to the application requirement, a person must demonstrate: (1) that she had a real and present interest in the job for which the employer was seeking applications; and (2) that she would have applied for the job but effectively was deterred from doing so by the employer's discriminatory practices." *Id*. Here, Plaintiff has not provided any evidence to show that she had a "real and present interest" in these other positions or that she was "effectively deterred" from applying. Moreover, while perhaps Plaintiff may have had a general interest in being promoted, that is not sufficient to establish a prima facie case when the employee fails to submit any application for an open position. *See Smith v. J. Smith Lanier & Co.,* 352 F.3d 1342, 1345 (11th Cir. 2003) ("A general interest in being [promoted] without submitting an application is not enough to establish a prima facie case of [race] discrimination when the defendant-employer has publicized an open position.").

Assuming, *arguendo*, Plaintiff had in fact applied for other positions as she claims (and there is not a shred of evidence that she did), she was not qualified for any of these more senior positions as she lacked the requisite background and/or education, as discussed above. Mr. Celorio was directly involved with hiring employees in the Accounting and Accounts Payable

16

Departments, and he made the hiring and promotion decisions in conjunction with the departmental managers. *SOF*, at E.9; E.13. Each of the individuals identified by Plaintiff were promoted based on their background experience, education, and performance while at Defendant. Despite Plaintiff's contention, she did not have the minimum qualifications necessary for any of these positions as her background was more clerical. *SOF*, at E.15.

Moreover, Mr. Celorio interacted with the Accounts Payable Department frequently and visibly observed how Plaintiff interacted with others in her Department. *SOF*, at E.14. Mr. Gomez advised Mr. Celorio that there were significant issues with Plaintiff's performance, and Ms. Rodriguez had similarly expressed dissatisfaction with Plaintiff's performance when she was the Accounts Payable Lead (before Mr. Gomez was hired). *Id*. Thus, even if Plaintiff offered evidence that she applied for any of these positions (and she did not), it stands to reason that there would have been a lack of confidence in her ability to perform successfully in a more challenging role. And most notably, there is simply not a *shred* of evidence that a decision to hire and/or promote anyone else, for any position, instead of Plaintiff, was based on discriminatory animus towards Plaintiff's age and/or national origin. Plaintiff offers nothing but speculation, conjecture, and unsupported conclusory assertions, rather than evidence, and she cannot establish her discrimination claims in such a manner. Plaintiff's failure to promote claim fails as a matter of fact and law, and should be dismissed.

### III.     CONCLUSION

As demonstrated above, there are no genuine issues of material fact and Defendant is entitled to summary final judgment as a matter of law. Defendant therefore respectfully requests entry of judgment in its favor.

WHEREFORE, Defendant, Crystal Cruises, LLC, respectfully requests that the Court enter summary judgment in its favor, dismissing Plaintiff's claims with prejudice, and that it grant such further relief as the Court deems just and proper, including attorneys' fees and costs associated with the defense of these claims.

*[Signature to Follow]*

DATED this 17th day of July 2020.                    Respectfully submitted,

                                                              LITTLER MENDELSON, P.C.
Wells Fargo Center
333 S.E. 2nd Avenue, Suite 2700
Miami, Florida  33131
Tel:  (305) 400-7500
Fax: (305) 603-2552

By: */s/ Rebecca Anguiano*
Aaron Reed
Florida Bar No. 0557153
E-Mail: areed@littler.com
Rebecca Anguiano
Florida Bar No. 99690
E-Mail: ranguiano@littler.com

*COUNSEL FOR DEFENDANT*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 17th day of July 2020, filed a true and correct copy of the foregoing document with the Clerk of the Court via CM/ECF System and a true and correct copy of the foregoing document was served on all counsel of record or pro se identified on the Service List via the CM/ECF System, E-mail, and Federal Express.

/s/ *Rebecca Anguiano*
Rebecca Anguiano

**SERVICE LIST**

*PLAINTIFF PRO SE*

Evelyn Fernandez
E-Mail: anaevef@yahoo.com
2262 NE 42nd Circle
Homestead, FL 33033
***VIA CM/ECF AND E-MAIL,
AND FEDEX***

*COUNSEL FOR DEFENDANT*

Aaron Reed
E-Mail: areed@littler.com
Rebecca Anguiano
E-Mail: ranguiano@littler.com
LITTLER MENDELSON, P.C.
Wells Fargo Center
333 S.E. 2nd Avenue, Suite 2700
Miami, Florida 33131
***VIA CM/ECF***

4832-2901-1651.1 090965.1007