# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 19-CV-22886-LOUIS

EVELYN FERNANDEZ,

Plaintiff,

vs.

CRYSTAL CRUISES, LLC, a foreign
Limited Liability Company

Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court on Defendant Crystal Cruises, LLC's Motion for Summary Judgment on Plaintiff's claims for employment discrimination (ECF No. 47). This case was reassigned to the undersigned United States Magistrate Judge pursuant to the Parties' joint election of jurisdiction (ECF No. 12). The Parties have stipulated to the full exercise of jurisdiction by the undersigned Magistrate Judge to conduct any and all further proceedings in this case, including trial (ECF No. 10). The Motion is fully briefed: Plaintiff Evelyn Fernandez filed a Response (ECF No. 60), Defendant filed its Reply (ECF No. 62), and Plaintiff filed a further Reply (ECF No. 63). Upon consideration of the Motion, Response, Replies, and being otherwise apprised in the matter, Defendant's Motion for Summary Judgment is **GRANTED**.

## I.     BACKGROUND

### a.   Plaintiff's Allegations

This dispute arises from Plaintiff's allegations that Defendant, her prior employer, subjected her to discrimination on the basis of her age (she asserts that she is and was at all relevant times 60 years old), sex, and Venezuelan origin (ECF No. 1-2 (State Court Complaint)).

1

Plaintiff alleges in her Complaint that during the course of the roughly 1.5 years she spent as an Accounts Payable Clerk, Defendant, through Director of Treasury Operations Lisa Wilson, denied her promotions, issued her poor job evaluations, disciplined her, and ultimately terminated her, all on the basis of her protected characteristics (*Id.* at 6).

Plaintiff asserts in her Complaint that she was qualified for her position and performed her duties in an "exemplary" or "above satisfactory" manner, and yet two less experienced, younger employees were promoted over her, while two other less experienced, younger coworkers were paid "significantly more" than Plaintiff even though they had less responsibility (*Id.*). Plaintiff additionally alleges that she was paid less than "most if not all" of the male clerks, even though their job functions were of "equal skill, effort, and responsibility" under comparable working conditions; she simultaneously alleges that she was entitled to wages equal to or greater than her male coworkers because she performed either the "same or substantially more work" than they did (*Id.* at 7).

Regarding Wilson, Plaintiff claims that in March 2017, Wilson stated that "you and Edna [a Colombian coworker of Plaintiff's] have the same problem," referring to the fact that the two women both had heavy Spanish accents (*Id.* at 6). Then, Plaintiff alleges that Wilson also spread a false rumor about Plaintiff that she "is a slut and a Latin stupid" (*Id.*). According to Plaintiff, Wilson gave Plaintiff poor job evaluations "several" times, including once in January 2018, which Plaintiff asserts prevented her from being promoted (*Id.*). Plaintiff claims that "on many occasions" Plaintiff was disciplined for "minor and trivial things" even though younger, non-Venezuelan, but otherwise comparable employees would do the same and never be disciplined (*Id.*).

Plaintiff asserts that she "continuously complained" to Wilson about both the derogatory comments and discriminatory treatment, but nothing ever changed (*Id.*). Sometime in March

2018, Plaintiff avers that she complained about the "discriminatory treatment and suspicious activity in the Payables Department" via email to Donald Mason, Defendant's Chief Financial Officer, and to John Polimenakos, the Vice President of Information Technology (*Id.*). Shortly thereafter, on April 2, 2018, Plaintiff claims that she was "terminated with no given reason" (*Id.*). Plaintiff asserts that her age "directly and proximately" led to her termination (*Id.* at 9); alternatively, she asserts that she was fired due to her national origin (*Id.* at 14).

      b.  <u>Factual Background</u>

The summary that follows is derived from evidence advanced by Defendant in support of its Motion for Summary Judgment, and the facts are not disputed, unless otherwise noted.[1]

*i.  Plaintiff's Employment with Defendant*

Plaintiff, who was born in Venezuela in 1957 (ECF No. 49-3 at 10:2-5). She started working as a temporary Accounts Payable Clerk in Defendant's Miami corporate office in December 2016, along with several other temporary clerks who began around the same time (ECF No. 49-1 at ¶ 5). Through Lisa Wilson, Defendant's Director of Treasury Operations, and Ricardo Celorio, Defendant's Controller, Defendant offered Plaintiff, who was previously employed through a staffing agency, full-time employment at as an Accounts Payable Clerk in March 2017, along with six other temporary workers; all workers in this group were hired as hourly employees and paid at a rate of $21.00 per hour, equivalent to $40,950.00 annually (ECF No. 49-2 at ¶¶ 5-7). Plaintiff's responsibilities included vendor account and invoice management related to Defendant's "Land Programs"[2] and Information Technology Services business areas. In addition to processing invoices and account verification, Plaintiff was

3

---

[1] In support of its Motion (ECF No. 47) and Statement of Undisputed Material Facts (ECF No. 48), Defendant attached declarations from Ricardo Celorio, Defendant's Controller; Odalys Cadenas, Defendant's Human Resources Director; and Jorge Gomez, Defendant's Accounts Payable Manager; as well as the transcript of Plaintiff's deposition (ECF No. 49).

[2] Defendant's Land Programs business area is responsible for activities, tours, and/or hotels booked for cruise ship guests when the ship is docked.

responsible for working as a liaison between Defendant and its customers and business partners to resolve invoice payment issues timely (*Id*. at ¶ 8; *Id*. at 19-20).

Jorge Gomez, shortly after being hired in May 2017 to supervise the Accounts Payable Clerks,[3] noticed Plaintiff frequently making mistakes in her daily responsibilities (ECF No. 49-4 at ¶¶ 3-5). For example, Gomez noticed Plaintiff selecting the incorrect vendor, currency, or method of payment when processing invoices, and observed her manually adjusting invoices in contravention of Defendant's policies (*Id*. at ¶ 5). Gomez spoke to Plaintiff directly about the mistakes, offering assistance and informal counseling; during one November 21, 2017, meeting to address performance concerns, Plaintiff acknowledged her errors and stated that she would be more attentive to detail moving forward (*Id*. at ¶¶ 6-7).

Plaintiff's performance failed to improve, however, and in five of the twelve categories—in each of which employees were given a score of 1 (the highest) to 5 (the lowest)—of her December 2017 performance evaluation, Plaintiff was given a score of 4, or "marginal," and which suggested her performance needed improvement (*Id.* at ¶ 8; *Id*. at 7). Gomez did not score Plaintiff above a 3 (considered the minimum or "Crystal Standard") in any category (*Id*. at ¶ 8; *Id*. at 7). Plaintiff ultimately received a 2% raise in February 2018, below the 3% baseline increase given to Accounts Payable Clerk's whose 2017 performance met expectations; Clerks whose performance exceeded expectations received increases of greater than 3% (*Id*. at ¶¶ 10, 14). Gomez again expressed his concerns about Plaintiff's performance and, upon learning why she was receiving a 2% rather than a 3% raise, Plaintiff stated "[t]hank you for that clarification and I feel more comfortable now. I'm happy with my salary increase. I promise you, will take [Gomez's] advice seriously and will do my best from

4

---

[3] Defendant had no Accounts Payable Manager prior to Gomez, who was hired for the role; Kalinka Rodriguez, the Accounts Payable Lead, supervised the temporary employees until she was terminated in March 2017.

now on" (*Id*. at ¶ 16; *Id*. at 10-11).  Nevertheless, Gomez saw no improvement in Plaintiff's performance (*Id*. at ¶ 17).

On March 26, 2018, a representative from the Ritz Carlton Hotel (the "Ritz"), one of Defendant's business partners, contacted another team member in the Lands Department, Nina McGaughy, and requested an urgent update after Plaintiff was unresponsive regarding two invoices covering the cost of a group stay at the Ritz (*Id*. at ¶ 18; *Id*. at 17-26).  The Ritz sent Plaintiff the deposit invoices on February 12, 2018, and repeatedly reached out to Plaintiff regarding payment but received no reply.  McGaughy reached out to Plaintiff on March 10, 2018, asking her to advise the Ritz when they would be paid, but she too heard nothing from Plaintiff (*Id*. at ¶ 18; *Id*. at 17-26).   On March 26, the Ritz told McGaughy that if Defendant did not issue payment by Midnight, the Ritz would require individual guests to personally cover the cost of their rooms (*Id*. at ¶ 18; *Id*. at 17-26).  Plaintiff's supervisors subsequently learned about the issue, who then spoke with John Stoll, Vice President of Land Programs, who in turn escalated to Donald Mason, Defendant's Chief Financial Officer (*Id*. at ¶ 19).  In addressing the issue with Gomez and Wilson, Mason mentioned that other vendors similarly called him to complain about Plaintiff's management of their accounts and issues with nonpayment (*Id.* at ¶ 20).

Upon discussion, Gomez and Wilson decided to terminate Plaintiff's employment in light of both the recent and ongoing issues with her performance; in particular, they worried her failure to respond to business partners in a timely fashion jeopardized those relationships, and Plaintiffs errors additionally caused Defendant to incur significant additional costs (*Id.* at ¶ 21).   Gomez requested approval to terminate Plaintiff's employment from Defendant's Human Resources Director, Odalys Cadenas on March 29, 2018, detailing Plaintiff's repeated mistakes over the prior six months and the steps taken by the department to address the issues,

to no avail (*Id.* at ¶ 22; *Id.* at 28).   Gomez further provided Cadenas with Plaintiff's 2017 performance evaluation and documentation related to recent issues, including the correspondence with the Ritz concerning the invoices (*Id.* at ¶ 22; *Id.* at 28).  Cadenas approved the termination, and she, with Gomez, met with Plaintiff on April 2, 2018, to inform her that she was being let go (ECF No. 49-2 at ¶¶ 14-15; ECF No. 49-4 at ¶ 23).  Plaintiff did not challenge the decision, claim that she was being discriminated against, or otherwise state that she was discriminated against at any point during her employment (ECF No. 49-2 at ¶ 16; ECF No. 49-4 at ¶ 25).  Plaintiff did, however, tell Gomez during the meeting that she enjoyed working for Defendant and that Gomez was the best boss she had ever had (ECF No. 49-2 at ¶ 17; ECF No. 49-4 at ¶ 26).  Gomez was unaware of Plaintiff's national origin both when the termination decision was made and when he informed Plaintiff that she was being terminated (ECF No. 49-4 at ¶ 24).  As she herself confirmed during deposition, Plaintiff was not told that she was terminated due to her age or national origin (ECF No. 49-3 at 108:25-109:11).

### ii.  Alleged Discriminatory Conduct

During her deposition, Plaintiff claimed that Wilson and a former employee named Kalinka Rodriguez discriminated against Plaintiff on the basis of her national origin (ECF No. 149-3 at 136:21-25, 137:9-18), and that Wilson, along with Celorio and another employee named Blanca Pena, discriminated against Plaintiff on the basis of her age (*Id.* at 137:1-8). Rodriguez served as the Accounts Payable Lead and supervised Plaintiff as a temporary employee, until Rodriguez was terminated in March 2017 (ECF No. 49-1 at ¶ 10).  Wilson, Celorio, and Rodriguez were all in Plaintiff's chain of command; Pena did not supervise Plaintiff, and worked in the Accounting Department, not Accounts Payable, where Plaintiff was located (*Id.* at ¶ 20).

Plaintiff acknowledged in her deposition that has possessed no evidence that Wilson

was involved in preparing her performance evaluation (ECF No. 49-3 at 189:7-10), but asserted that Wilson blocked her from promotions, disciplined her for minor infractions, issued poor performance evaluations, and terminated her employment (*Id.* at 145:8-146:5). In particular, Plaintiff cites three instances during Accounts Payable departmental meetings during which Wilson stated, "sorry, I'm too old" while looking in Plaintiff's direction; Plaintiff felt these remarks were directed at her (*Id*. at 145:2-4, 156:18-157:1, 157:15-20, 158:15-159:5, 159:16-160:5). Plaintiff also recalled an incident in which Wilson once told Plaintiff that "you and Edna have the same problem," which Plaintiff believed was a reference to her accent (*Id*. at 141:20-24, 142:1-5), though Plaintiff conceded that she never heard Wilson say anything about her accent directly (*Id.* at 154:18-155:6). Plaintiff further stated that she did not otherwise hear Wilson make inappropriate remarks about her age or national origin (*Id.* at 155:25-156:4).

Plaintiff testified during the deposition that she "heard rumors" Pena and Rodriguez referred to Plaintiff as a "stupid old woman" and a "prostitute" (*Id.* at 147:1-8, 148:13-21, 149:19-23, 151:9-152:4). Plaintiff did not ever personally hear Rodriguez or Pena remark on Plaintiff's age or national origin (*Id.* at 147:1-7). Plaintiff stated that Celorio was a "gentleman" who was "incapable" of making comments about her age (*Id.* at 139:12-13), nonetheless she assumes that Celorio discriminated against her on the basis of her age, because Celorio knew Plaintiff's age and because Plaintiff was not promoted (*Id.* at 140:2-10).

Plaintiff also reasserted during her deposition that she received less pay than two other male employees while performing comparable work (*Id.* at 124:6-9). While she did not know the salary of one of the two employees, Plaintiff stated that she believed this employee was paid more based on rumors she heard (*Id*. at 125:19-25; 126:8-15). In response, Defendant advances evidence that the male employees in question, both of whom started with Plaintiff as temporary and then permanent clerks at the same salary as Plaintiff, received raises from 3-

3.5% based on their 2017 performance evaluations (ECF No. 49-4 at ¶ 11).  One employee's performance was deemed to have "met standards" in the evaluation, and the employee received a 3% raise (*Id.* at ¶ 12).  Comparably, the second employee's performance outperformed standards, and he thus received a 3.5% raise (*Id.*).  Defendant further offers evidence that female Accounts Payable Clerks whose performance met or exceeded expectations received the same 3% or 3.5% pay increase, just as the men did (*Id.* at ¶ 13).

Defendant's Employee Handbook contained Equal Employment Opportunity and Anti-Harassment Policies, which included procedures by which an employee experiencing discrimination could report the issue to Human Resources or any officer of the company (ECF No. 49-2 ¶ 4; *Id.* at 6-9).  When deposed, Plaintiff stated that she knew of these procedures (ECF No. 49-3 at 108:25-109:11), and yet she never made complaints that she was being discriminated against for any reason, whether that be her age, national origin, gender, or otherwise (ECF No. 49-2 at ¶ 18; ECF No. 49-4 at ¶ 27).  Neither did Plaintiff ever file a complaint of any nature against Wilson, Pena, Rodriguez, or Celorio (ECF No. 49-2 at ¶ 19; ECF No. 49-4 at ¶ 28).

### iii.   Promotions

Defendant notifies all employees of open positions and advises them on how to apply, and all applications received are sent directly to Defendant's Human Resources Department; Human Resources never received an application from Plaintiff for either a promotion or any other open position (ECF No. 49-2 at ¶¶ 10-12).  Nevertheless, Plaintiff claimed during her deposition that eight employees received promotions over her (ECF No. 49-3 at 162:4-20, 173:21-174:1, 175:12-23, 178:23-179:1).

Defendant offers proof that four of those employees started as temporary Accounts Payable Clerks in December 2016 and transitioned into full-time employees in March 2017,

just as Plaintiff did (ECF No. 49-1 at ¶¶ 15-18).  One was promoted to Accounts Payable Lead in May 2017, while another was promoted to the role of Accounts Payable Analyst in January 2018 (*Id.*).  Two further employees on Plaintiff's list were promoted to Junior Staff Accountant roles after Plaintiff's termination (*Id.*).  Finally, Plaintiff's list also encompasses four additional employees who did not start work with Defendant at the same time as Plaintiff, and did not work in the Accounts Payable Department, but who were ultimately promoted to various Staff Accountant positions (*Id.* at ¶¶ 19-22).  One of these four employees is also Venezuelan and was hired seven months before Plaintiff began her role as a temporary clerk with Defendant (*Id.* at ¶ 20).

According to Celorio, Plaintiff did not possess the qualifications needed for the Accounts Payable Lead, Accounts Payable Analyst, or Staff Accountant roles (*Id.* at ¶ 27). An accounting degree was required for all but the Junior Staff Accountant role, though it was still "preferred" in that instance (*Id.* at ¶ 24).  The Account Payable Analyst and Accounts Payable Lead positions are considered by Defendant to be senior supervisory roles in nature; they require, says Defendant, the ability to "train and direct" the Accounts Payable team, which necessitates being able to work self-sufficiently and with initiative (*Id.* at ¶ 25).  Defendant offers evidence that Plaintiff has neither an accounting degree nor any significant experience in accounting work, and the majority of Plaintiff's work experience prior to starting with Defendant was clerical in nature (*Id.* at ¶ 27).

Celorio, as the Controller, worked with Accounting Manager Michelle Soules and Director Luis Puentes to make hiring and promotion decisions within the Accounting Department, and he had direct involvement in deciding to hire and/or promote six of the employees Plaintiff claims were promoted over her (*Id.* at ¶¶ 12-14).  Within the Accounts Payable Department, Celorio worked with Wilson and Gomez to make hiring and promotion

decisions (*Id.*).  Celorio never directly supervised Plaintiff but did observe how she interacted within the Accounts Payable Department; Rodriguez and Gomez both expressed to him their dissatisfaction with Plaintiff's performance (*Id.* at ¶¶ 8-10).

      c. <u>Procedural History</u>

    After exhausting her administrative remedies, which included filing a Charge of Discrimination with the Equal Employment Opportunity Commission, Plaintiff filed a complaint in Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida in May 2019, asserting five causes of action against Defendant as follows:  (1) discrimination in compensation in violation of the Equal Pay Act of 1963, 29 U.S.C. § 206, *et seq*. ("EPA"); (2) age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*. ("ADEA"); (3) age discrimination in violation of the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 *et seq*. ("FCRA"); (4) national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1); and (5) national origin discrimination in violation of the FCRA (ECF No. 1-2).

    Defendant timely removed the action to federal court on July 12, 2019 under 28 U.S.C. § 1446(b), averring the action was removable to this Court under 28 U.S.C. §§ 1331, 1441, and that this Court has jurisdiction to hear the claims pursuant to 28 U.S.C. §§ 1331, 1367 (ECF No. 1).  After the close of fact discovery on June 19, 2020 (ECF No. 43), Defendant brought the instant motion.  Plaintiff proceeds in this action *pro se* following her counsel's withdrawal, which cited irreconcilable differences (ECF Nos. 22, 26).

## II.    APPLICABLE LAW

      a. <u>Summary Judgment</u>

    Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(a).   The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   To discharge this burden, the movant must identify an absence of evidence to support the nonmoving party's case.   *Id.* at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must support her assertion that a genuine material fact remains in dispute by citing to specific parts of the record. *Sutton v. Royal Caribbean Cruises Ltd.*, 285 F. Supp. 3d 1349, 1351 (S.D. Fla. 2018) ("In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, answers to interrogatories, and admissions that a specific fact exist demonstrating a genuine issue for trial."), *aff'd*, 774 F. App'x 508 (11th Cir. 2019). A fact or issue is material for purposes of summary judgment only if it might affect the outcome of the suit under the governing law. *Webb v. Carnival Corp.*, No. 15-CV-24230, 2017 WL 10795681, at *2 (S.D. Fla. Jan. 13, 2017).   Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Id.* (citing *Celotex Corp.*, 477 U.S. at 323).

In considering a motion for summary judgment, the Court must evaluate the evidence and make all inferences in the light most favorable to the nonmoving party. *Sutton*, 285 F. Supp. at 135 (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586). However, the nonmoving party may not merely point to a scintilla of evidence that creates a metaphysical doubt about

an issue; instead, the evidence must be sufficient to allow a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co*., 475 U.S. at 586-87. Axiomatically, evidence is required; conclusory and unsubstantiated averments will not do, *Leigh v. Warner Bros., Inc*., 212 F.3d 1210, 1217 (11th Cir. 2000), and citations to specific record evidence are necessary, *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116-17 (11th Cir. 1993).

a.   Equal Pay Act

A *prima facie* case under the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1), requires a Plaintiff to demonstrate that the offending employer pays "different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). Upon making out a *prima facie* case, the burden of proof then shifts to the employer to prove that sex was not a factor in the wage disparity, *Mulhall v. Advance Sec.*, 19 F. 3d 586, 590 (11th Cir. 1994), which the defendant may do under one of the Equal Pay Act's exceptions, *Corning Glass Works*, 417 U.S. at 196 ("(i) seniority; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." (quoting 29 U.S.C. § 206(d)(1))).

If the employer satisfies his burden by a preponderance of the evidence, the burden shifts back to the plaintiff to prove the proffered explanation is "pretextual or offered as a post-event justification for a gender-based differential." *Reddy v. Dep't of Educ., Alabama*, 808 F. App'x 803, 810 (11th Cir. 2020) (citations omitted). Plaintiff must offer evidence that either directly establishes discrimination or would permit a fact finder to reasonably disbelieve the employer's justification. *Id*. Summary judgment is appropriate in such cases where the plaintiff merely "quarrel[s] with the wisdom" of the employer but fails to point to

affirmative evidence establishing that the reasons offered were a pretext for discrimination on the basis of sex. *Id.* (citing *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1314 (11th Cir. 2018)).

### b. Title VII and Florida Civil Rights Act

Title VII prohibits discrimination in employment decisions on the basis of "race, color, religion, sex or national origin." *See* 42 U.S.C. § 2000e-2(a)(1).[4]  A plaintiff may prevail on her Title VII claim by proving that discrimination was a "motivating factor" in the employment decision, *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012), which the plaintiff may accomplish by offering either direct or circumstantial evidence, *Gray v. Deloitte LLP*, No. 20-11185, 2021 WL 926903, at *1 (11th Cir. Mar. 11, 2021) (citing *Dixon v. The Hallmark Cos.*, 627 F.3d 849, 854 (11th Cir. 2010)).  Circumstantial evidence suggests rather than proves discrimination, often requiring one or more inferences to reach the conclusion that the employer was motivated by discriminatory animus.  *See id*.  Therefore, remarks unrelated to the decision-making process are considered circumstantial, rather than direct, evidence.  *Id.*

Absent the presence of direct evidence, the Court applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Gray*, 2021 WL 926903, at *1.  *McDonnell Douglas* requires a plaintiff to make out a *prima facie* case, which, in the context of Title VII claims, the plaintiff may establish by showing, "among other things, that he was:  (1) subject to an adverse employment action and (2) treated differently than a similarly situated employee outside his protected class."  *Id.*, at *2 (citation omitted); *see also Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir.

---

[4] The FCRA is patterned after Title VII, and thus the same legal framework applies to FCRA and Title VII claims.  *See Hicks-Washington v. Hous. Auth. of City of Fort Lauderdale*, 803 F. App'x 295, 300 (11th Cir.), *cert. denied*, 141 S. Ct. 366 (2020).

2003) (additionally listing the requirement that the plaintiff demonstrate that he was qualified for the job he held). Upon establishing a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate reason for the adverse action. *Id*. If the employer can rebut the presumption, the plaintiff must then prove that the reason offered by the employer is pretextual. *Id*.; *see also Lee v. GTE Fla., Inc*., 226 F.3d 1249, 1253 (11th Cir. 2000).

A *prima facie* case for a failure to promote claim under Title VII requires that the plaintiff also prove he was "qualified and applied for the promotion." *Lee*, 226 F.3d at 1253. Further, if the employer articulates a non-discriminatory reason for failing to promote the employee, the plaintiff cannot carry its burden to prove that reason was a pretext by merely showing that he was *more* qualified than the promoted individual. *Id*. ("A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by sex."). A plaintiff's superior qualifications relative to the promoted employee(s) may still be probative, but unless the plaintiff demonstrates that he was *substantially* more qualified, this fact is not determinative. *Id*. (noting that the Fifth Circuit explained that such disparities must be "so apparent as virtually to jump off the page and slap you in the face" (quoting *Deines v. Texas Dep't of Protective & Regul. Servs*., 164 F.3d 277, 281 (5th Cir. 1999))).

A plaintiff's failure to produce a comparator as required under *McDonnell Douglas* is not strictly fatal to her case, if she can produce sufficient circumstantial evidence that creates a "triable issue concerning the employer's discriminatory intent*." Smith v. Lockheed-Martin Corp*., 644 F.3d 1321, 1328 (11th Cir. 2011) (citation omitted). In such a case, the plaintiff establishes a triable issue by presenting a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id*.; *see also Lewis v. Sch. Bd. of Palm Beach Cty., Fla*., No. 19-14702, 2021 WL 872139, at *4 (11th Cir.

Mar. 9, 2021) (noting that "suspicious timing, ambiguous statements . . . and other bits and pieces from which an inference of discriminatory intent might be drawn" may contribute to the mosaic (citations omitted)).  This does not, however, alleviate the plaintiff of her burden to offer sufficient evidence to permit a trier of fact to *infer* discrimination occurred; "[i]nferences based upon speculation are not reasonable." *Lewis*, 2021 WL 872139, at \*4; *Smith*, 644 F.3d at 1328 n. 25 ("[A]n inference, is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact." (citation omitted)).

### c.  Age Discrimination in Employment Act

Age Discrimination in Employment Act of 1967 prohibits employers from discharging an employee, who is 40 years of age or older, on the basis of her age.  *See* 29 U.S.C. §§ 623(a)(1), 631(a).  To establish an ADEA claim, plaintiff bears the burden of persuasion to prove that age was the "but-for" cause of the employer's adverse action.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).  In this way, the ADEA differs from statutes, such as Title VII, requiring only that a plaintiff demonstrate that the employer's bias was "a motivating factor" in the adverse decision.  *Sims v. MVM, Inc.*, 704 F.3d 1327, 1335 (11th Cir. 2013).  While the motivating factor test, analogous to proximate causation in tort law, requires simply "some direct relation" between the proscribed animus and the adverse decision, under the "but-for" requirement of the ADEA the animus must have determinatively influenced the employer's adverse decision.  *Id.*  (citations omitted).

The ADEA, therefore, imposes a higher bar for plaintiffs, requiring more than what must be proven under Title VII.  *Sims*, 704 F.3d at 1336.  Relatedly, the burden-shifting framework does not apply here, and the plaintiff retains the burden even where he introduces evidence that age was "one motivating factor" in the employer's decision.  *See Gross*, 557

U.S. at 180 (adding that this is true even in the context of alleged "mixed motivation" claims

where Plaintiff may also allege that the adverse actions were motivated by, for example, sex

or national origin in violation of Title VII).

### III.   ANALYSIS

#### a.   Plaintiff's Response

As a threshold matter, I must address the significant deficiencies surrounding

Plaintiff's Response to Defendant's Motion and her response to Defendants Statement of

Undisputed Materials Facts, the latter of which fails to comply with Local Rule 56.1.   In

opposing a motion for summary judgment, the non-moving party is required to respond to the

movant's statement of material facts by admitting or denying in identically numbered

paragraphs, and *any additional facts* may be included at the end and must be supported by

evidence.   In stark contrast to the orderly format contemplated by the Rule, Plaintiff's own

18-page statement of facts offers long narrative responses to those facts with which she

disagrees; in these responses, she introduces not only new facts, but also new legal claims.

For example, paragraph seven of Defendants Undisputed Material Facts states the following:

> Plaintiff received a 2% raise at this time, which changed her pay rate
> to $21.42 per hour.   *Pl. Dep.*, 52:13-17.   She was given a 2% raise, because
> her 2017 evaluation demonstrated that her performance was below standards.
> *Gomez Dec.*, at ¶14.   The underlying reason for the 2% raise was explained
> to Plaintiff, and she responded by saying: "Thank you for that clarification
> and I feel more comfortable now. I'm happy with my salary increase.   I
> promise you, will take Jorge's advice seriously and will do my best from now
> on."   *Id.*, at ¶16, Ex. B.

(ECF No. 48 at ¶ 7).   By contrast, Plaintiff's response to paragraph seven in her own statement

of facts is as follows:

> Plaintiff disputes this Defendant's statement since the job annual
> evaluation since Lisa Wilson (Lisa Wilson is not her real name) holding a
> high school diploma and previous working experience 6 months as Accounts
> Payable Clerk or Analyst at Royal Caribbean Cruise Line without a valid right

to work in the United States, and Jorge Gomez, Accounts Payable Manager, with lack of valuable academic records and working experience to perform in a worldwide company as Crystal Cruises. None of them are under regular employment at Crystal Cruises; since one of them, do not have a valid right to work in the United States; therefore, they could not be able to perform a fair and legitimate 2017 performance evaluation to Evelyn Fernandez; therefore, Lisa Wilson and Jorge Gomez are not a fair, legal and legitimate supervisors and this job annual evaluation is illegal and illegitimate. *Id.*[5]

(ECF No. 61 at 5).

While many of the facts asserted by Plaintiff to rebut Defendant's proffered facts evidence are entirely devoid of evidentiary support, those that include citations refer to exhibits with no apparent connection to the fact asserted.  For example, in responding to paragraph eight of Defendant's statement of facts, which addresses Defendant's baseline standards for its performance evaluations and corresponding merit-based wage increases, Plaintiff states, in part, that she "disputes the Defendant's statement about her infamous job annual evaluation 2017 since it was a '**written defamation**' or '**libel**' (Exhibit N) that Lisa Wilson, as Director; Treasury Operations, used in order to deny Plaintiff promotion and unfairly fired her on 04/02/2018" (ECF No. 61 at 6) (emphasis in original).  The referenced "Exhibit N," filed along with Plaintiff's Response to Defendant's Motion, is the same copy of the 2017 performance evaluation offered as evidence by Defendant (ECF No. 60-1 at 35). Ignoring the fact that this is a new factual and legal averment—an issue discussed more fully below—the evaluation does not mention libel or written defamation, nor does it address Defendant's evaluative criteria at all; in short, nothing in the response or the cited exhibit addresses or rebuts the fact it purports to rebut.

In light of these deficiencies, under Local Rule 56.1, the Court has the authority to deem as admitted all the facts submitted by Defendants in support of their summary judgment

---

[5] It is not apparent to the Court what the "*Id.*" citation refers to here.

arguments. *See Tim Hortons USA, Inc. v. Singh*, No. 16-23041-CIV, 2017 WL 1326285, at *3 (S.D. Fla. Apr. 5, 2017). Plaintiff's *pro se* status does not excuse her non-compliance with the local rules and indeed, this Court has previously admonished Plaintiff from failing to adhere to the local rules. *See* ECF No. 52. In fact, I previously struck the first response filed by Plaintiff that failed to comply with Local Rule 56.1 and ordered Plaintiff to amend her response, cautioning her that failure to follow the format outlined in the Order (and required by Local Rule 56.1) would result in the imposition of sanctions, "including an order deeming facts not specifically controverted as admitted" (ECF No. 59). Notwithstanding, the Court has examined all of the evidence advanced by Plaintiff in opposition to the Motion and finds that no material dispute of fact has been raised.

Plaintiff attached the following as exhibits to her Response: (1) a letter from an "international education consultant" Josef Silny & Associates that asserts Plaintiff has the equivalent of a Bachelor of Arts in Economics, a Master of Business Administration with a concentration in finance, and 24 credit hours in undergraduate accounting; (2) a transcript from the Keller Graduate School of Management of DeVry University; (3) Plaintiff's resume, which I must assume was self-generated; (4) a 2010 recommendation letter from the Director of Finance of La Gorce Country Club asserting that Plaintiff worked as a staff accountant for almost 2.5 years; (5) a 2008 recommendation letter from the Controller of the Fisher Island Club where Plaintiff worked for approximately 2.5 years as a staff accountant until she was terminated for budgetary reasons; (6) a brief 2011 recommendation letter from an accountant within the Finance Department of Miami-Dade County where Plaintiff worked for roughly eight months; (7) approximately 18 LinkedIn profiles corresponding to the Defendant employees referenced in Plaintiff's Response; (8) Plaintiff's 2017 Performance Evaluation with Defendant; (9) what appears to be Plaintiff's prescription medication record; (10) a

discharge order and instructions from South Miami Hospital; (11) several printed public internet pages reflecting information about Defendant's corporate structure; and, finally, (12) what appears to be a 2015 press release from Genting Hong Kong Limited noting its acquisition of Defendant (ECF No. 60-1).

Defendant, in its Reply, asserts that none of this evidence is admissible and thus it must be disregarded wholesale (ECF No. 62 at 2).  Rule 56(c), in relevant part here, requires a party to cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. Pro. 56(c)(1)(A).  As a practical matter, even if the evidence offered is not itself admissible, it must be able to be "reduced to an admissible form."  *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005).   It is true that none of the evidence offered by Plaintiff is presently in admissible form; among other issues, none of the documents have been authenticated, *see* Fed. R. Evid. 901(a), and her claims regarding statements made by other Defendant employees are similarly inadmissible hearsay, *see* Fed. R. Evid. 801(c), 802.

However, the standard is not that the evidence presented at summary judgment be admissible in its current state, as noted in *Rowell*; rather, it simply must be capable of being reduced to admissible evidence.  433 F.3d at 800.  Indeed, as recognized in *Rowell*, in certain instances courts have, for example, considered hearsay at the summary judgment phase in employment discrimination cases where it can be shown by a preponderance of the evidence that the individual who made the statement is an agent of the employer, *id.* (citing Fed. R. Evid. 104), or where the individual is a manager and the statements reflect their participation in either the employment decision or the policy of the employer, *id*. (citing Fed. R. Evid.

801(d)(2)(D)).

In her Complaint, Plaintiff alleges that Wilson made two discriminatory remarks to her: she claims Wilson stated "I'm so old" and directed the comment at Plaintiff, and Wilson stated Plaintiff and "Edna have the same problem," referring to the fact that they both speak with a Spanish accent (ECF No. 1-2 at 6). In order for these statements to be admissible, Plaintiff would need to offer evidence that Wilson was, in the moment she spoke, (1) an agent of the employer; (2) that her statements reflected Wilsons participation in the employment decision or the policy of the employer. Plaintiff makes no such argument and introduces no such evidence.[6] Further, apart from her bare allegations, Plaintiff offers no record evidence, whether that be a declaration, affidavit, or otherwise, to permit a trier of fact to conclude the statements she alleges were actually made. Because no evidence is advanced in support, the Court cannot properly consider these allegations.

Plaintiff also alleged in her Complaint that Wilson started a rumor that Plaintiff was a "slut" and a "Latin stupid" (*id*.), and Plaintiff alleged in her deposition that she heard rumors Pena and Rodriguez called her a "stupid old woman" and a "prostitute" (ECF No. 49-3 at 147:1-8, 149:19-23, 151:9-152:4). These rumors suffer from all of the same hearsay issues as Wilson's alleged statements above, but, because Plaintiff did not even witness the statements herself, the allegations are double hearsay, which would raise the additional hurdle of requiring Plaintiff to prove that both the initial statement, *and* the statement as relayed to her are both admissible. *See* Fed. R. Evid. 805. As above, Plaintiff does not make any argument or offer any evidence in support of a claim for admissibility, nor does she even note with specificity who repeated the rumor to her. The rumors too, therefore, cannot properly

---

[6] Plaintiff's response to Defendant's statement of facts refers to the allegation that "[Plaintiff] and Edna have the same problem," *see, e.g.*, ECF No. 61 at 10, but "disputes" that Defendant made the "I'm too old" remark.

be considered as evidence.

The next batch of evidence can best be categorized as items that would, if true, tend to prove her qualifications; for example, the letter from Josef Silny & Associates, her reference letters, and her transcript from DeVry (ECF No. 60-1).  None of these items are currently in admissible form, as Plaintiff offers no evidence to support their authenticity. Because they conceivably could be authenticated, the Court will consider these documents as evidence of Plaintiff's accounting experience and education for the sake of argument.

The remainder of the evidence is similarly unauthenticated, but, more to the point, it is irrelevant to her opposition of Defendant's Motion.  The LinkedIn pages, for example, almost certainly could not be reduced to admissible evidence under any circumstances and, even so, none of them prove that the employee in question was not qualified for his or her position, as Plaintiff suggests.  Plaintiff's 2017 performance evaluation, standing alone, would only prove that Plaintiff received a performance evaluation and that she, in part, disagreed with ratings and categories at the time the evaluation was given; this does not suggest that the evaluation was in any way discriminatory, nor does it contradict the evidence offered by Defendant that Plaintiff later stated, in response to an email from Wilson explaining how her raise was tied to the performance evaluation, that "[t]hank you for that clarification and I feel more comfortable now. I'm happy with my salary increase" (ECF No. 49-4 ¶ 16; Id. at 10).  Likewise, the unauthenticated personal medical records Plaintiff offers do not offer support for claims of age, sex, or national origin discrimination.

As noted above, in addition to failing to rebut the facts and evidence offered by Defendant in support of its Motion, Plaintiff's Response briefing and corresponding statement of facts introduce a host of new and wholly irrelevant matters.  For example, Plaintiff references claims for defamation, slander, intentional infliction of emotional distress, and sexual harassment,

among other things, none of which are alleged in the complaint. Further, Plaintiff includes in her Response allegations that various Defendant employees are or were illegally employed or illegally in the United States, along with allegations that Defendant is engaged in some kind of criminal enterprise. I am sensitive to the plight of the *pro se* Plaintiff, who has no legal training or experience, but even common sense would dictate that including allegations of this nature in a signed document submitted to the Court is serious business; beyond the fact that these allegations are unrelated to Plaintiff's claims, they are entirely unsubstantiated, and are at various points borderline heinous in nature.

The Court reminds Plaintiff that litigants, as well as their attorneys, may be subject to sanctions for swearing false information or filing frivolous claims. Not only will the Court decline to consider these additional claims, but any information offered in support of these claims will similarly not be considered by the Court, notwithstanding that these facts suffer from the same evidentiary insufficiency issues noted above and, in any event, would almost wholly not tend to support Plaintiff's discrimination claims. In fact, none of Plaintiff's filings meaningfully advance evidence or arguments that would allow any rational trier of fact to find in Plaintiff's favor. Defendant's Motion is functionally unopposed by Plaintiff, and thus the question becomes whether Defendant sufficiently carried its burden to advance evidence showing that there is no issue of material fact that would give Plaintiff a path to victory at trial.

> b. Defendant's Motion

> > i. *Equal Pay Act Claims*

Defendant first argues that Plaintiff's EPA claim must fail because, as an initial matter, Plaintiff has not made out a *prima facie* case that sex was a factor in any pay disparities, as required to shift the burden to Defendant (ECF No. 47 at 3). Even if she could, says Defendant, it falls within the EPA's articulated exception for pay differentiation

attributable to a merit system.  Defendant adduces evidence that the two male employees Plaintiff specifically cites as evidence of her claims were actually paid $21 hourly—just as Plaintiff was—when they began working at Defendant in March 2017—just as Plaintiff did—as Accounts Payable Clerks (ECF No. 48 at 8-9).  Defendant acknowledges that these two male employees received raises of 3-3.5% in 2018, higher than Plaintiff's 2% raise, but Defendant offers proof that this disparity can be explained by the fact that the two male peers were deemed to either have "met" or "exceeded" performance expectations in their 2017 performance reviews, while Plaintiff did not (*Id.*).

I find that Defendant has carried its burden to show that there are no determinative facts that would permit Plaintiff to prevail on her claim of sex discrimination under the Equal Pay Act.  Plaintiff has offered only conclusory allegations that Defendant paid her male colleagues more and that this was so because she is a woman.  She has not offered evidence to prove the pay disparity at all, which at this stage is fatal as it is one of the two requisite components for a *prima facie* case.  Even assuming that she had, shifting the burden to Defendant, Defendant has sufficiently proven that (1) the two male employees were initially paid the same wage as Plaintiff, and (2) the subsequent pay disparity among Plaintiff and the two male employees arose following the process established by Defendant's merit-based system.  This puts the ball back in Plaintiff's court, and for her claim to survive, she must offer affirmative evidence to show that this merit system is only a pretext or a post hoc justification offered to explain away discrimination.  *See Reddy*, 808 F. App'x at 810 (citations omitted).  Plaintiff offers no affirmative evidence; she indirectly "quarrels with the wisdom" of Defendant in offering the two male employees a more significant raise than she received, *see id.*, and thus summary judgment is proper on Plaintiff's claim under the EPA.

### ii.  Age, National Origin, and FCRA Discrimination Claims

Defendant next collectively addresses Plaintiff's age and national origin discrimination claims under the ADEA, Title VII, and FCRA, claiming that they all follow the same burden-shifting analysis laid out by *McDonnell Douglas* (ECF No. 47 at 5 n. 2), and, under each claim, Plaintiff cannot prove her *prima facie* case as required (*Id.* at 7).  While the same analytical framework applies for Title VII and FCRA claims, Plaintiff actually faces a higher burden under the ADEA, for which there is no burden shifting; she must prove that, but-for her age, she would not have suffered any adverse employment action. Because, however, Plaintiff offers *no* support for her claims, as discussed more fully below, and thus could not make any showing under the ADEA, the Court will consider the claims collectively.

Defendant first asserts that Plaintiff's claimed direct evidence of discrimination is insufficient to carry her burden on its own.  While Plaintiff claimed that Wilson made a derogatory comment about Plaintiff's accent when she stated that "[Plaintiff] and Edna have the same problem," Plaintiff offers no evidence to prove that in this case the phrase "the same problem" refers to Plaintiff's accent or her Venezuelan origin.  As noted above, Plaintiff offers no evidence that Wilson made the statement "I'm too old" or that it was a reference to Plaintiff's age.  Defendant argues Plaintiff cannot stand on the allegation that Pena and Rodriguez called her a "stupid old woman" and a "prostitute," because this was a "rumor" that she only heard secondhand, and, further, neither Pena nor Rodriguez were involved in Defendant's decision to terminate Plaintiff (*Id.* at 8).  Considered cumulatively, Defendant avers that these statements are too attenuated and vague to provide direct evidence of discrimination.

The Court agrees.  Setting aside the evidentiary issues above, even if the statements could be taken as true, none proves that Plaintiff's age or Venezuelan heritage was connected

to any employment decision by Defendant.  Consider, for example, the difference between "I'm too old" and "you are too old to hold this position and therefore I am terminating you"; the latter is direct evidence of discrimination, the former is not.  And without additional supporting evidence, it is impossible to know what "problem" Edna and Plaintiff shared; it is equally likely that the problem had nothing to do with Plaintiff's accent, and any conclusion to the contrary is entirely speculative.

Defendant then argues that Plaintiff cannot establish her case via circumstantial evidence because she cannot point to similarly situated employees outside Plaintiff's protected class that were treated more favorably than Plaintiff (*Id*. at 9).  Defendant defines "similarly situated" in this instance as other employees in Plaintiff's department who committed "all of the same or similar offenses" but who were not terminated (*Id.* at 9-10 ("The 'nature of the offenses committed and the nature of the punishment imposed' are the key to determining what conduct  is  'similar.'" (quoting *Jones v. Gerwens*, 874 F.2d 1534, 1540-41 (11th Cir. 1989))).  Defendant advanced evidence that Plaintiff made frequent errors in carrying out her day-to-day responsibilities in processing invoices (ECF No. 49-4 at ¶ 5), these issues continued despite formal and informal discussions (*Id.* at ¶ 17), which ultimately led to vendors contacting other employees at Defendant—including Defendant's Chief Financial Officer—to address Plaintiff's mismanagement of their accounts and issues around nonpayment (*Id.* at ¶¶ 18-20).

Plaintiff claimed in her Complaint and Response that other employees made similar mistakes but suffered no consequences; however, during her deposition, when asked for examples of other employees who made similar mistakes, Plaintiff stated that she believed this to be the case because the other employees were "humans" and "not machines," and therefore, she claimed, they too must have made errors (ECF No. 49-3 at 233:16-22).  In her Response, Plaintiff

asserts that, around 2017, a Finance Administrator and the General Manager in Defendant's Los Angeles office both committed errors in processing payments but were not terminated (ECF No. 60 at 9-10). Plaintiff, however, offers no evidence in support of this statement, for one of the employees she lists only a first name (Michael), and she does not even argue, with facts or otherwise, that these employees are proper comparators. In short, Plaintiff has knowledge of no other similar mistakes made by other comparable employees for which they suffered no consequences. Defendant argues that Plaintiff's belief, without competent evidence, is an insufficient basis for Plaintiff to establish a *prima facie* case (ECF No. 47 at 11), and I agree. Plaintiff here offers no evidence of any kind that a comparable employee outside her protected class made the same—or even vaguely similar—mistakes and avoided discipline, and for that reason her claim here fails.

Defendant argues that, even if Plaintiff could make her *prima facie* case, Plaintiff's ongoing performance issues leading to her termination are a legitimate, non-discriminatory reason for firing her (*Id.* at 12). As discussed above, Plaintiff's performance issues were chronic and did not improve, despite the fact that Gomez discussed them with her repeatedly (ECF No. 48 at 2-3). The incident with the Ritz was the final tipping point, which brought her non-responsiveness to the CFO's attention; after he shared that he too had received vendor complaints regarding Plaintiff's work product, Gomez and Wilson ultimately decided to reach out to Human Resources to have Plaintiff terminated (*Id.* at 4-5). Plaintiff adduces no contrary evidence and stands only on her allegations, and for that reason alone Defendant is able to carry its burden here. Summary judgment is warranted with respect to Plaintiff's claims under the ADEA, FCRA, and Title VII that she was terminated on the basis of her age and/or national origin.

Finally, Plaintiff alleges that she was denied promotions on the basis of her age and

national origin.  Here, Defendant again notes the absence of evidence offered by Plaintiff to prove that she applied for any promotion, and, indeed, Defendant advanced uncontroverted proof that Plaintiff did not do so (ECF No. 49-2 ¶ 13).  Defendant also offers evidence that all employees were "notified of available and open positions" and were told how they might apply (*Id.* at ¶¶ 10-11).  Plaintiff offered no evidence that she, in the alternative, refrained from applying due to a justifiable belief that, despite her "real and present" interest in the posted position, Defendant's discriminatory practices would make that application futile. *See EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1274 (11th Cir. 2002).

As a further point, Defendant adduced evidence that four of the eight individuals that Plaintiff asserts were promoted over her were actually not promoted until after Plaintiff was terminated, and thus they cannot form the basis of any claim (ECF No. 49-1 at ¶¶  15-18 (noting the promotions occurred from April 2, 2018 through August 20, 2018)).  Defendant argues that Plaintiff cannot prove that she was more qualified for the positions achieved by the other four individuals she references, two of whom were promoted to staff accountant roles and had both significant prior accounting experience and accounting degrees, while Plaintiff does not (*Id.* at 15).  The final two employees were promoted to supervisory positions within Plaintiff's department (Accounts Payable Analyst and Accounts Payable Lead), for which Defendant argues that Plaintiff would not have been qualified had she applied, given her "inability to properly conduct her own work" and her failure to "demonstrate  any initiative  in  her  work," both of which were necessary for leadership positions (*Id.*).  Finally, Defendant asserts that Plaintiff has not offered any evidence to suggest that age or national origin were a factor in the promotional decisions, and, indeed, one of the promoted individuals is of Venezuelan origin like Plaintiff (*Id.*).

Again, Plaintiff's argument that Defendant refused to promote Plaintiff because of her

age and/or Venezuelan heritage falls short at numerous points.  First, the fact that Plaintiff has not offered any proof that she applied for positions with Defendant other than the one she already held, combined with the fact that she offered no evidence that she was deterred from applying by Defendant's discriminatory practices, is sufficient to end the inquiry. Given this dearth of evidence, it is not necessary to consider whether Plaintiff was qualified for any of the positions she implies she should have been given.  Accepting Plaintiff's proffered evidence of her accounting background (ECF No. 60-1), this evidence alone would not be sufficient to prove that she was qualified for an accounting position according to Defendant's qualifications.

Even absent these impediments preventing Plaintiff from crossing the *prima facie* case threshold, Defendant has advanced concrete evidence that these employees were promoted based on their education and experience (ECF No. 48 at 6-7).  In order to defeat Defendant's claim for summary judgment here, Plaintiff would therefore need to show that Defendant's proffered evidence is merely a pretext for discrimination or that she was substantially more qualified than the promoted employees, but Plaintiff has adduced no evidence to this effect. Therefore, summary judgement is warranted with respect to Plaintiff's failure to promote claim as well.

## IV.        CONCLUSION

The undersigned finds that Defendant has carried its burden to prove that there is no issue of material fact that would permit a rational fact finder to rule in Plaintiff's favor and thus Defendant's Motion is **GRANTED**.  A separate order dismissing this case will be entered.

The Clerk's Office is directed to mail a copy to *pro se* Plaintiff at the address on the docket and to her email address: anaevef@yahoo.com.

**DONE** and **ORDERED** in Miami, Florida this 29th day of March, 2021.

_____

LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE